UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| FRANKLIN D. LEE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 1:10-CV-293 |
| v. ) | |
| ) | Chief Judge Curtis L. Collier |
| CAPTRAN SC, LLC, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM

Before the Court are several motions filed by Plaintiff Franklin D. Lee ("Plaintiff") and Defendant Captran SC, LLC ("Defendant"). Defendant filed a motion to compel arbitration and to stay the proceedings (Court File No. 13). In response, Plaintiff filed a motion to stay arbitration (Court File No. 18). Defendant also filed a motion for an extension of time to join additional parties (Court File No. 15) and a motion for leave to file an affidavit as a supplement to its motion to compel arbitration (Court File No. 22).

For the reasons stated below, the Court will **GRANT** Defendant's motion to compel arbitration (Court File No. 13) and will **STAY** this proceeding pending arbitration. Accordingly, the Court will **DENY** Plaintiff's motion to stay arbitration (Court File No. 18), **GRANT** Defendant's motion for an extension of time to join additional parties (Court File No. 15), and **GRANT** Defendant's motion for leave to supplement its motion to compel arbitration (Court File No. 22).

**I.  BACKGROUND**

In June 2000, Plaintiff suffered work-related injuries when he was an employee of CSX

Transportation, Inc. ("CSX") (Court File No. 19). As a result of his injuries, Plaintiff was unable to work beginning in November 2001, and he eventually filed suit against CSX to recover for his injuries (*id.*).

Because Plaintiff was unable to earn an income, he entered into two separate contractual agreements with Defendant, a South Carolina company, in order to secure funds to cover his living expenses (Court File No. 1-1). One of the services offered by Defendant is to "provide[] . . . litigation finance to personal injury [p]etitioners" (*id.* at 2). In other words, Defendant "loans money to [p]etitioners involved in litigation and in return, [petitioners] agree[] to reimburse [Defendant] from any proceeds from the lawsuit, plus interest on the money loaned" (*id.*).

Specifically, on February 28, 2007, Plaintiff and Defendant entered an agreement in which Defendant agreed to loan Plaintiff a lump sum of $109,600 in addition to six monthly payments of $2,000 each month. On October 4, 2007, the parties entered a second contractual agreement whereby Defendant agreed to again pay Plaintiff monthly installments of $2,000 for three additional months (*id.*). The parties never met in person, the contracts were "unilaterally drafted" by Defendant, and the agreements were signed by Plaintiff in Tennessee and by Defendant in North Carolina (Court File No. 19).

At the time Plaintiff and Defendant commenced their business relationship, the contractual agreements signed by the parties also contained arbitration clauses (Court File No. 13-1; 13-2). These arbitrations clauses mandated that any claim or controversy arising out of the parties' relationship should be settled by arbitration to take place in South Carolina (*id.*). Accordingly, as a result of Plaintiff's alleged failure to repay Defendant for his loans, "in March 2010, [Defendant] filed a demand for arbitration . . . seeking $310,410.67, representing alleged principal of $127,600

(including capitalized interest) and interest and fees of $182,810.67" (Court File No. 19 at 4).

In response to Defendant's demand for arbitration, Plaintiff filed a Petition for Declaratory Judgment in the Chancery Court of Polk County Tennessee (Court File No. 19). Defendant removed the matter to this Court (Court File No. 1). Plaintiff now challenges the enforceability of specific contractual terms contained in the Investment and Security Agreements entered between the parties such as the interest rate attached to the loans, the choice of law provisions, and the arbitration provisions (Court File Nos. 14, 19).

## II. MOTION TO FILE AFFIDAVIT

Defendant seeks permission to supplement its motion to compel arbitration with the affidavit of Wayne C. Walker, in accordance with E.D.TN L.R. 7.1 (Court File No. 22). In Defendant's motion to compel arbitration, Defendant argues the parties' South Carolina choice of law provision should be enforceable because South Carolina has a material connection to the parties and the transactions at issue (Court File Nos. 13, 14). The affidavit, which supports Defendant's contentions regarding the choice of law provisions, states at the time the parties entered their contractual agreements, Defendant had an office at 6650 Rivers Avenue, Charleston, South Carolina 29406 (Court File No. 22-1).

Plaintiff did not file a response in opposition to Defendant's motion to supplement its motion to compel arbitration. Because the Court finds Defendant's motion to be well-taken, the Court will **GRANT** Defendant's motion (Court File No. 22) and **ACCEPTS** the affidavit of Wayne C. Walker (Court File No. 22-1).

## II. MOTIONS TO COMPEL/STAY ARBITRATION

Both Plaintiff and Defendant have filed motions regarding the enforceability of the arbitration provisions in this case. The Court finds the law favors arbitration in this case and therefore will grant Defendant's motion to compel arbitration.

### A. Standard of Review

Defendant's motion to compel arbitration (Court File No. 13) and Plaintiff's motion to stay arbitration (Court File No. 18) are governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq*. Under the FAA, arbitration clauses in commercial contracts "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *see also Rent-A-Center, West, Inc. v. Jackson*, 130 S.Ct. 2772, 2776 (2010). Moreover, the provisions of the FAA are mandatory. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). "By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Id.* (emphasis in original) (citing 9 U.S.C. §§ 3-4).

A party may avoid arbitration, however, by (1) showing the dispute at hand is beyond the scope of the arbitration agreement, or (2) showing the agreement itself is invalid or unenforceable. *Great Earth Cos. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002). The "party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.–Alabama v. Randolph*, 531 U.S. 79, 91 (2000).

In this case, Plaintiff brings multiple challenges to the validity of the arbitration agreement. Specifically, Plaintiff argues (1) the arbitration agreements are "unconscionable contracts of

adhesion and should not be enforced"; (2) "the choice of law (South Carolina) provisions . . . are invalid"; and (3) provisions regarding annual interest rates as applied to the loans render the contracts as a whole, including the arbitration provisions, unenforceable on the grounds the provisions "shock the conscience of a reasonable person" (Court File No. 18; *see also* Court File No. 16).

Generally, whether the parties have an enforceable arbitration agreement is an issue the Court must decide. *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 130 S.Ct. 2847, 2855 (2010); *Howsam v. Dean Witter Reynolds*, 537 U.S. 79, 83–84 (2002); *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 392 (6th Cir. 2003). Nonetheless, this Court "may consider only claims concerning the validity of the arbitration clause itself, as opposed to challenges to the validity of the contract as a whole, in determining whether a valid agreement to arbitrate exists." *Masco Corp. v. Zurich Am. Ins. Co.*, 382 F.3d 624, 629 (6th Cir. 2004) (referencing *Prima Paint Corp. v. Flood & Conklin Mfg. Co*, 388 U.S. 395, 402-406 (1967)); *see also Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445 (2006) (check citation). Indeed, "a general arbitration clause is enforceable even if it is contained in a contract that is generally asserted to be voidable, unless the basis for rescission applies specifically to the arbitration clause." *Masco Corp.*, 382 F.3d at 628. Accordingly, the Court will not address whether the annual interest rates render the contracts as a whole unenforceable for the purpose of determining whether the arbitration agreements at hand are enforceable.

**B.     Analysis**

    **1.     Choice of Law**

This Court must first look to Tennessee's conflict-of-law rules to determine which state's laws must apply to the arbitration provisions. *Curtis 1000, Inc. v. Martin*, 197 F. App'x 412, 418

(6th Cir. 2006). Tennessee courts abide by the rule of *lex loci contractus. Id.* Under this doctrine, "a contract is presumed to be made with reference to the law of the place where it was entered into unless it appears it was entered into in good faith with reference to the law of some other state." *Cooper v. MRM Investment Co.*, 367 F.3d 493, 499 (6th Cir. 2004) (citing *Ohio Cas. Ins. Co. v. The Travelers Indem. Ins. Co.*, 493 S.W.2d 465, 467 (Tenn. 1973)). Indeed, "parties ordinarily are free to contract that the law of some jurisdiction other than that of the place of making will govern their relationship." *Goodwin Bros. Leasing, Inc. v. H&B Inc.,* 597 S.W.2d 303, 306 (Tenn. 1980).

Here, the parties demonstrated an intent for the laws of South Carolina to govern (*see e.g.,* Court File No. 13-1). In order for this Court to "defer to the [parties'] agreement," however, certain requirements must be met. *Curtis 1000*, 197 F. App'x at 418.

> First, the choice of law provision must be executed in good faith. Second, the jurisdiction whose law is chosen must bear a material connection to the transaction. Third, the basis for the choice of another jurisdiction's law must be reasonable and not merely a sham or subterfuge. Finally, the parties' choice of another jurisdiction's law must not be contrary to a fundamental policy of a state having a materially greater interest and whose law would otherwise govern.

*Id.* (citing *Goodwin Bros. Leasing, Inc. v. H&B Inc.*, 597 S.W.2d 303, 306 (Tenn. 1980)) (internal citations omitted).

Plaintiff argues "the choice of law (South Carolina) provisions contained in the [arbitration agreements] are invalid because (1) South Carolina has no relation whatsoever with the parties or events at issue," (2) the selection of that state was "merely a sham and/or subterfuge," and (3) "the basis for choosing South Carolina as the forum state is contrary to the fundamental policy of Tennessee" (Court File Nos. 16, 16-1). Although Plaintiff does not explicitly argue the choice of

law provision was not executed in good faith,[1] the court in *Goodwin Brothers* construed the term "good faith" to mean "that the other state must have some direct and relevant connection with the transaction and that the choice of law was not merely a sham or subterfuge." *Goodwin Bros. Leasing, Inc.*, 597 S.W.2d at 306. Therefore, it seems Plaintiff moves this Court to find none of the requirements have been met for the Court to apply the laws of South Carolina to this case.

To support his assertions, Plaintiff contends "there is no evidence that [Defendant] has any office or conducts any operations in South Carolina or that South Carolina is related in any manner to the transactions between these parties" (Court File No. 19 at 7). Indeed, Defendant's principal place of business is in Southern Pines, North Carolina (Court File No. 16-1). In addition, none of the contract negotiations appear to have taken place in South Carolina.

In contrast, Defendant argues South Carolina does have a reasonable relation to the transactions at issue in this case (Court File No. 14). For instance, although Defendant's principal place of business is located in North Carolina, the company was incorporated under the laws of South Carolina (*id.*), and Defendant had a business office in Charleston, South Carolina at the time the contracts were executed (Court File No. 22-1, Affidavit of Wayne C. Walker). *See English Mountain Spring Water Co., Inc. v. AIDCO Intern.,* Inc., No. 3:07-cv-324, 2008 WL 2278627, at *2 (E.D. Tenn. May 30, 2008); *see also Friendship Home Healthcare, Inc. v. Procura, LLC*, No. 3:09-0016, 2010 WL 500427, at *4 (M.D. Tenn. February 5, 2010) (finding a material connection to the state of Utah where Defendant had offices in Utah). Furthermore, Defendant implies there is "no indication that the contract was entered into bad faith. The provision is clear and explicit that

---

[1]However, Plaintiff does assert the entire arbitration agreement was not executed in good faith (*see e.g.,* Court File No. 16-1).

[South Carolina] law governs," and Plaintiff was given the opportunity to consult an attorney before he entered into the contract. *English Mountain Spring Water Co., Inc.*, 2008 WL 2278627, at *2; *CIT Group/Equip. Financing, Inc. v. Landreth*, 2007 WL 4554224. Finally, Defendant argues the choice of law provision "is not contrary to the fundamental policies of Tennessee" (Court File No. 14 at 11-12).

Here, the Court finds the facts as a whole show the state of South Carolina has some direct and relevant connection to the transaction. Defendant is a South Carolina company, and it was incorporated under the laws of that state. *See e.g., Raeth v. Nat'l City Bank*, - - - F.Supp.2d - - -, 2010 WL 5140831, at *7 (W.D. Tenn. Nov. 12, 2010). In addition, at the time the transaction took place, Defendant operated an office in Charleston, South Carolina. Furthermore, there is no indication the choice of law provision was drafted in bad faith, nor has Plaintiff provided evidence that the law of South Carolina is contrary to the fundamental policies of Tennessee.

### 2. Unconscionable Contracts of Adhesion

Because the Court upholds the parties' choice of law provision, it will apply South Carolina law to determine whether the arbitration provisions are enforceable. Plaintiff argues the arbitration agreements should not be enforced because they are unconscionable contracts of adhesion. This Court disagrees, finding the arbitration agreements are enforceable under South Carolina law.[2]

---

[2]The Court also finds the arbitration agreements would be enforceable under Tennessee law. In Tennessee, adhesion contracts "are unenforceable only when the terms are 'beyond the reasonable expectations of an ordinary person, or oppressive or unconscionable." *Seawright v. Am. Gen. Fin. Servs., Inc.*, 507 F.3d 967, 976 (6th Cir. 2007) (quoting *Buranczynski v. Eyring*, 919 S.W.2d 314, 320 (Tenn. 1996)). "A contract is unconscionable when the 'inequality of the bargain is so manifest as to shock the judgment of a person of common sense, and where the terms are so oppressive that no reasonable person would make them on the one hand, and no honest and fair person would accept them on the other." *Id.* at 977 (quoting *Haun v. King*, 690 S.W.2d 869, 872 (Tenn. Ct. App. 1984)). Here, Plaintiff has provided no evidence to show the terms of the arbitration agreements are so

According to South Carolina law, a contract is an adhesion contract if provided "on a standard form, presented on a take-it-or-leave-it basis." *Herron v. Century BMW*, 387 S.C. 525, 531 (S.C. 2010). Here, it is clear the arbitration agreements were provided on a standard form, and it does not appear that Plaintiff participated in the drafting or negotiation of the arbitration provisions. *Id.* at 530. Nonetheless, in order to find that an adhesion contract is unenforceable, there must have been an "absence of meaningful choice on the part of one party, due to one-sided contract provisions, together with terms that are so oppressive that no reasonable person would make them and no fair and honest person would accept them." *Id*. at 532. In other words, the contract must be both an adhesion contract and unconscionable.

To determine whether the contract is unconscionable, the Court must look to the facts and circumstances of this particular case. *Holler v. Holler*, 612 S.E.2d 469, 476 (2005). The Court should look at factors "including the nature of the injuries suffered by the plaintiff; the relative disparity in the parties' bargaining power; the parties' relative sophistication; whether there is an element of surprise in the inclusion of the contract provision; and the conspicuousness of the clause." *Smalls v. Advance America*, No. 2:07-3249-TLW-TER, 2008 WL 4177297, at *14 (D.S.C. Sept. 5, 2008). The relevant question is "whether the arbitration agreement 'is geared towards achieving an unbiased decision by a neutral decision-maker.'" *Id.* (citing *Simpson v. MSA of Myrtle Beach, Inc.*, 644 S.E.2d 663, 669 (S.C. 2007)).

Here, Plaintiff primarily argues the arbitration agreements are unconscionable because Plaintiff is required to incur the costs and expenses of arbitrating in South Carolina, and he must pay half of the costs of arbitration (Court File No. 19). Therefore, he asserts he has been deprived of a

---

oppressive that no reasonable person would agree to the terms.

forum for relief (*id*).  However, "where a party seeks to invalidate an arbitration agreement on the ground that the arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." *Small*, 2008 WL 4177297, at *15 (citing *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 502 (4th Cir. 2002) (internal citations and quotations omitted).  As pointed out by Defendant, Plaintiff has failed to provide any evidence regarding the potential physical or financial hardships arbitration might cause or his inability to pay for such costs, even if he does have to pay half of the incurred expenses (*see* Court File No. 20 at 12).

Moreover, any other arguments Plaintiff might offer would also be unpersuasive.  Even though Defendant is a company and Plaintiff is an individual, under the terms of the arbitration provisions (*see e.g,* Court File No. 13-1), both parties "are subject to the same terms in the arbitration agreement, thus there is no lack of mutuality in remedy." *Herron*, 387 S.C. at 534.  In addition, Plaintiff had a "duty to read the contract and learn of its contents before signing it." *Smalls v. Advance America*, No. 2:07-3249-TLW-TER, 2008 WL 4177297, at *15 (D.S.C. Sept. 5, 2008).  Here, Plaintiff was under the advisement of counsel when he signed the contractual agreements (*see e.g.,* Court File No. 13-4).  Finally, Plaintiff has not shown that the arbitration agreements are so one-sided that an ordinary person would not agree to the terms.  Accordingly, the Court will **GRANT** Defendant's motion to compel arbitration (Court File No. 13) and **DENY** Plaintiff's motion to stay arbitration (Court File No. 18).

### III. MOTION FOR EXTENSION OF TIME

Defendant also filed a motion for an order extending the time to join additional parties under Rule 19 of the Federal Rules of Civil Procedure (Court File No. 15).  Plaintiff did not file a response

in opposition to Defendant's motion. The Court also finds this motion to be well taken. Accordingly, Defendant's motion will be **GRANTED**. Defendant may file a motion to join additional parties up until and including ten (10) days following the conclusion of arbitration.

## IV.  CONCLUSION

For the foregoing reasons, the Court will **GRANT** Defendant's motion to compel arbitration (Court File No. 13) and will **STAY** this proceeding pending arbitration. The Court will also **DENY** Plaintiff's motion to stay arbitration (Court File No. 18), **GRANT** Defendant's motion for an extension of time to join additional parties (Court File No. 15), and **GRANT** Defendant's motion for leave to supplement its motion to compel arbitration (Court File No. 22).

An Order shall enter.

/s/
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**