UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| FRANKLIN D. LEE, ) | |
| Plaintiff, ) | No. 1:10-CV-293 |
| ) | |
| v. ) | Chief Judge Curtis L. Collier |
| ) | |
| CAPTRAN SC, LLC, ) | |
| Defendant. ) | |

**M E M O R A N D U M**

Before the Court is Defendant Captran SC, LLC ("Defendant")'s motion for confirmation of arbitration award and entry of judgment (Court File No. 26). Plaintiff Franklin D. Lee ("Plaintiff") responded in opposition (Court File No. 29), and Defendant replied to Plaintiff's response (Court File No. 31). Plaintiff then requested a hearing (Court File No. 32), which the Court set for June 6, 2012. Having considered the parties' written submissions and conducted a hearing on the motion, the Court will **GRANT IN PART** Defendant's motion for confirmation of arbitration award and entry of judgment (Court File No. 26) for the reasons and in the manner explained below. Because no further matters for adjudication remain, the Court will direct the Clerk of Court to close this case.

**I.   BACKGROUND**

In June 2000, Plaintiff suffered work-related injuries when he was an employee of CSX Transportation, Inc. ("CSX") (Court File No. 19). As a result of his injuries, Plaintiff was unable to work beginning in November 2001, and he eventually filed suit against CSX to recover for his

injuries (*id.*).

Because Plaintiff was unable to earn an income, he entered into two separate contractual agreements with Defendant, a South Carolina company, in order to secure funds to cover his living expenses (Court File No. 1-1). One of the services offered by Defendant is to "provide[] . . . litigation finance to personal injury [p]etitioners" (*id.* at 2). In other words, Defendant "loans money to [p]etitioners involved in litigation and in return, [petitioners] agree[] to reimburse [Defendant] from any proceeds from the lawsuit, plus interest on the money loaned" (*id.*).

Specifically, on February 28, 2007, Plaintiff and Defendant entered an agreement ("February Agreement") in which Defendant agreed to loan Plaintiff a lump sum of $109,600 in addition to six monthly payments of $2,000 each month. On October 4, 2007, the parties entered a second contractual agreement ("October Agreement") whereby Defendant agreed to again pay Plaintiff monthly installments of $2,000 for three additional months (*id.*). The parties never met in person, the contracts were "unilaterally drafted" by Defendant, and the agreements were signed by Plaintiff in Tennessee and by Defendant in North Carolina (Court File No. 19).

At the time Plaintiff and Defendant commenced their business relationship, the contractual agreements signed by the parties also contained arbitration clauses (Court File No. 13-1; 13-2). These arbitrations clauses mandated that any claim or controversy arising out of the parties' relationship should be settled by arbitration to take place in South Carolina (*id.*). Accordingly, as a result of Plaintiff's alleged failure to repay Defendant for his loans, "in March 2010, [Defendant] filed a demand for arbitration . . . seeking $310,410.67, representing alleged principal of $127,600 (including capitalized interest) and interest and fees of $182,810.67" (Court File No. 19 at 4).

In response to Defendant's demand for arbitration, Plaintiff filed a Petition for

2

Declaratory Judgment in the Chancery Court of Polk County Tennessee (Court File No. 19). Defendant removed the matter to this Court (Court File No. 1). Plaintiff then challenged the enforceability of specific contractual terms contained in the Investment and Security Agreements entered between the parties such as the interest rate attached to the loans, the choice of law provisions, and the arbitration provisions (Court File Nos. 13).

On March 11, 2011 the Court granted Defendant's motion to compel arbitration, stayed proceedings in the case pending arbitration, and required a status report within 180 days of the order (Court File No. 24). The parties began arbitration proceedings on June 29, 2011 in Charleston, South Carolina. Before the arbitration hearing began, Plaintiff informed Defendant that Plaintiff was unable to disclose the terms of the settlement between him and CSX on account of a confidentiality agreement. Defendant then moved to require Plaintiff to disclose the settlement terms, which the arbitrator orally granted, before issuing a written order on August 9, 2011 (Court File No. 26, ex. A). At a September 30, 2011 management conference, Defendant informed the arbitrator it was willing to proceed to arbitration without receiving a copy of the settlement agreement between Plaintiff and CSX (Court File No. 29, ex. 3). At that same management conference, the arbitrator confirmed the parties' agreement to decide the dispute based on the parties' written submissions.

On January 27, 2012, the arbitrator ruled in favor of Defendant, awarding Defendant $239,681.82 under the February Agreement, $10,741.86 under the October Agreement, and $38,281.06 in attorney's fees (Court File No. 26, ex. 3, p. 12). The cost of arbitration—the administrative filing fees ($ 4,750.00) and compensation and expenses of the arbitrator ($16,640.00)—was to be "borne as incurred" by the parties (*id.*). Defendant has paid $12,750.00 towards the cost of arbitration; Plaintiff has not paid any amount.

3

On February 24, 2012, Plaintiff's counsel tendered a check for $288,704.54 to Defendant's counsel. This amount represented the full award the arbitrator made to Defendant, but did not include any amount for the cost of arbitration. On February 28, 2012, Defendant's counsel returned the check to Plaintiff's counsel and, in a letter, stated "[a]s previously mentioned, your client is responsible for half of the arbitration expenses" (Court File No. 29, ex. 2, p. 3). On March 26, 2012, Defendant filed the motion for confirmation of arbitration award and entry of judgment now before the Court (Court File No. 26).

On April 30, 2012, Plaintiff requested the Court to conduct a hearing on Defendant's motion (Court File No. 32). The Court conducted that hearing on June 6, 2012.

**II.    DISCUSSION**

Since the enactment of the Federal Arbitration Act, 9 U.S.C. §§ *et seq.*, courts have sought to "reverse the longstanding judicial hostility to arbitration agreements ... and to place arbitration agreements upon the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991). Accordingly, when parties have agreed to commit certain matters to arbitration, a court's review of a subsequent arbitration award is narrow. *Way Bakery v. Truck Drivers Local No. 164*, 363 F.3d 590, 593 (6th Cir. 2004) ("A court's review of an arbitration award 'is one of the narrowest standards of judicial review in all of American jurisprudence.'") (citation omitted). Moreover, an arbitration agreement's silence with respect to costs and fees of the arbitration neither renders that agreement invalid, *Green-Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 92 (2000), nor places into a court's hands the decision of how to allocate fees under the agreement. In brief, when parties commit a given matter to arbitration, they bind themselves to the factual findings, legal conclusions, and related rulings of

4

the arbitrator. *Totes Isotoner Corp. v. Int'l Chem. Workers and Union Council/UFCW Local 664C*, 532 F.3d 405, 411 (6th Cir. 2008) ("Indeed, 'because the parties have contracted to have disputes settled by an arbitrator chosen by them rather than by a judge, it is the arbitrator's view of the facts and of the meaning of the contract that they have agreed to accept.'") (quoting *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.,* 484 U.S. 29, 37-38 (1987).

Based on the parties written submissions, the Court identified two issues in dispute between the parties. Importantly, neither challenges the underlying arbitration itself nor the monetary award to Defendant. Instead, the parties now dispute 1) whether Plaintiff has an obligation to disclose his settlement with CSX; and 2) how the cost of arbitration should be paid. The Court addresses each of these issues in turn.

**A. Settlement Agreement between Plaintiff and CSX**

As a preliminary matter, counsel for Defendant failed to advance any argument during the hearing in support of its claim Plaintiff should be required to disclose the settlement agreement between Plaintiff and CSX. Accordingly, and as the Court stated at the hearing, counsel for Defendant effectively waived this claim by not arguing for it. Even if counsel had not waived this claim, however, Defendant's argument in its brief is unpersuasive.[1]

Defendant's argument consists only of the claim the arbitrator initially agreed with it that Plaintiff should have to disclose the settlement agreement. This argument neglects subsequent developments: namely, that Defendant initially sought disclosure of Plaintiff's settlement agreement with CSX but then retracted that request. Although the arbitrator orally granted

---

[1] In fact, Defendant made no argument in its memorandum in support of its motion to confirm the arbitration award (Court File No. 27). Only when Plaintiff objected in his response brief to disclosing his settlement agreement with CSX, which Defendant requested but did not argue for in its motion or memorandum, did Defendant offer an argument in its reply brief (*See* Court File No. 31, pp. 8-9).

5

Defendant's request when Defendant first raised it, before memorializing that order in a written document, the arbitrator acknowledged Defendant's decision to withdraw the request. Thus, in an order on October 3, 2011, the arbitrator indicated Plaintiff was "relieved of any obligation to provide" the settlement document (Court File No. 29, ex. 3). Both parties are bound by this decision, and the Court will not revisit it at Defendant's request. *See Totes Isotoner Corp.*, 532 F.3d at 411. Accordingly, the Court denies Defendant's motion to the extent it seeks disclosure of the settlement agreement between Plaintiff and CSX.[2]

### B. Cost of Arbitration

The heart of the current dispute appears to center on the extent to which each party is responsible to pay the cost of the arbitration. In the arbitration decision, the arbitrator's language regarding the cost of arbitration was admittedly somewhat vague: "The administrative filing fees of the American Arbitration Association, totaling $4,750.00 and the compensation and expenses of the Arbitrator, totaling $16,640.00, shall be borne as incurred" (Court File No. 26, ex. 3, p. 12). According to the parties' submissions, Defendant has paid $12,750.00 towards this amount, and Plaintiff has not paid anything.

Defendant argues Plaintiff must pay half the cost of the arbitration, on the theory the arbitration clause in their agreement refers to the *Commercial Arbitration Rules* of the American Arbitration Association ("AAA"), which, in Rule 50, provides:

> The expenses of witnesses for either side shall be paid by the party producing such witnesses. *All other expenses of the arbitration*, including required travel and other expenses of the arbitrator, AAA representatives, and any witness and the cost of any proof produced at the direct request of the arbitrator, *shall be borne*

---

[2] At a practical level, it is difficult to understand why Defendant is seeking disclosure of this document. Defendant was successful at arbitration, receiving an award of approximately $250,000 (as well as approximately $40,000 for attorney's fees), and Plaintiff has not contested the underlying award itself.

6

> *equally by the parties*, unless they agree otherwise or unless the arbitrator in the award assesses such expenses or any part thereof against any specified party or parties.

AAA, *Commercial Arbitration Rules*, Rule 50 (emphasis added). Here, Defendant argues, the agreement between Plaintiff and Defendant did not provide for any other division of the costs of arbitration and the arbitrator did not assess expenses in any particular manner, so the default cost-splitting rule should apply. Accordingly, Defendant contends, Plaintiff must pay half.

In response, Plaintiff advances an argument he did not raise at the arbitration itself: the dispute involved a consumer and therefore Defendant is responsible for the full payment of the cost of arbitration. Plaintiff invokes the *Supplementary Procedures for the Resolution of Consumer-Related Disputes* (hereinafter "*Supplementary Procedures*"), and claims that under these procedures, Defendant is required to pay the full amount. This argument suffers from a number of flaws.

The first two problems concern the applicability of the *Supplementary Procedures* to this arbitration. The *Supplementary Procedures*

> shall apply whenever the American Arbitration Association (AAA) or its rules are used in an agreement between a consumer and a business where the business has a standardized, systematic application of arbitration clauses with customers and where the terms and conditions of the purchase of standardized, consumable goods or services are non-negotiable or primarily non-negotiable in most or all of its terms, conditions, features, or choices. The product or service must be for personal or household use. The AAA will have the discretion to apply or not to apply the Supplementary Procedures and the parties will be able to bring any disputes concerning the application or non-application to the attention of the arbitrator.

*Supplementary Procedures*, C-1: Agreement of Parties and Applicability. First, assuming the use of an arbitration clause by Defendant is a standardized, systematic part of its transaction with customers, it is doubtful a loan to purse a legal claim counts as personal or household use.

7

Although the arbitrator, in a different context, decided loans were "most probably" for personal, family, or household purposes, he also concluded the loans did not warrant protection under South Carolina's consumer protection (Court File No. 26, ex. 3, p. 8).

Second, the paragraph makes clear the applicability of these *Supplementary Procedures* turns on the discretion of the AAA, and that parties should bring to the attention of the *arbitrator*—not a court—any disputes regarding these procedures' applicability. Here, nothing in the record indicates the AAA or the arbitrator applied these *Supplementary Procedures*. Moreover, neither party appears to have brought to the arbitrator's attention the applicability of these procedures. In the absence of any explicit mention these *Supplementary Procedures* apply, the Court concludes the arbitrator did not apply, nor intend to apply, these procedures.

Finally, even assuming the applicability of the *Supplementary Procedures*, Plaintiff is mistaken about the allocation of cost. The *Supplementary Procedures* provide that "[i]f the business's claim or counterclaim exceeds \$75,000[3] or if the business's claim or counterclaim is non-monetary, the business must pay an Administrative Fee in accordance with the Commercial Fee Schedule." *Supplementary Procedures*, C-8: Administrative Fees and Arbitrator Fees, Fees and Deposits to be Paid by the Business. Thus, rather than making the business pay the full amount of the arbitration, the *Supplementary Procedures* requires the business to pay an administrative fee. According to Defendant's submissions, it has paid this fee in this case.

Neither Plaintiff nor Defendant cites case law related to the cost of the arbitration. While not directly on point, the Sixth Circuit Court of Appeals' *en banc* decision in *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646 (6th Cir. 2003), is insightful. In *Morrison*, a former employee of Circuit City brought race and sex discrimination claims against her employer, and the district

---

[3] Both parties agree the amount at issue here exceeds \$75,000.

8

court required her, pursuant to her contract, to pursue these claims in arbitration. The Sixth Circuit reversed, holding in this employer-employee context "potential litigants must be given an opportunity, prior to arbitration on the merits, to demonstrate that the potential costs of arbitration are great enough to deter them and similarly situated individuals from seeking to vindicate their federal statutory rights in the arbitral forum." *Id.* at 663. Moreover, "a court considering whether a cost-splitting provision is enforceable should consider similarly situated potential litigants, for whom costs will loom as a larger concern, because it is, in large part, their presence in the system that will deter discriminatory practices." *Id.* Although *Morrison* is probably best limited to cases where a potential plaintiff seeks to vindicate an important federal interest (like the discrimination claims in *Morrison* itself), the broader principle suggests cost-splitting provisions may be unenforceable where such provisions would deter other plaintiffs who might otherwise seek to vindicate their rights. Given the widely used structure of contingency fees for plaintiffs pursuing tort and contract actions outside the employer-employee context, this principle applied to the facts of this case supports the conclusion that cost-splitting here is not problematic and would not deter potential litigants in the future.

Finally, one can read the arbitrator's statement that costs should be "borne as incurred" to refer to the arrangement made by the parties. Since the arbitration clause in the February and October 2007 agreements did not specifically address the cost of arbitration but did refer to the AAA's *Commercial Arbitration Rules*, the arbitrator's statement can be construed to refer to the default arrangement under Rule 50 which requires cost-splitting. Because a court reviewing an arbitral decision should not unsettle the factual findings and legal conclusions of an arbitrator, *Totes Isotoner Corp.*, 532 F.3d at 411, this Court defers to the arbitrator's implicit reliance on the default cost-splitting rule. Under this view and in light of the weakness of Plaintiff's arguments

9

to the contrary, the Court interprets the arbitration award to require Plaintiff to pay half the cost of arbitration.

Accordingly, and based on the record in this case, the Court orders Plaintiff to pay half the cost of arbitration. Because the total cost of arbitration was $21,390, Plaintiff must pay $10,695. Because Defendant has already paid $12,750.00 towards the cost of arbitration, Plaintiff should pay $2,055 of the $10,695 directly to Defendant. Therefore, the total amount Plaintiff must pay Defendant is $290,759.54, which represents $250,423.48 under the February and October Agreements, $38,281.06 in attorney's fees associated with the arbitration, and $2,055 to offset Defendant's overpayment towards the cost of arbitration. Plaintiff must also pay $8,640 to the appropriate authority[4] to satisfy its obligation to pay half the cost of arbitration.[5]

## III. CONCLUSION

For the reasons discussed in this memorandum, the Court will **GRANT** Defendant's motion for confirmation of arbitration award and entry of judgment (Court File No. 26), with the exception of Defendant's request for disclosure of Plaintiff's settlement agreement with CSX and Defendant's request Plaintiff pay its attorney's fees incurred in bringing its motion.

An Order shall enter.

---

[4] The record does clearly indicate the entity or person to whom this payment should be made. The Court hereby requires Defendant to make this payment, but must rely on the parties to ensure Defendant makes the appropriate payment to the appropriate source.

[5] Defendant's motion also requests the Court order Plaintiff to pay all attorney's fees incurred in bringing it (Court File No. 26, p. 4). Counsel for Defendant advanced no arguments in support of this claim. Accordingly, the Court denies this request. Each party is required to bear its own costs and attorney's fees associated with resolution of this motion.

/s/ _____
CURTIS L. COLLIER
CHIEF UNITED STATES DISTRICT JUDGE